# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BENYEHUDAH WHITFIELD, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 13-CV-653-SMY-RJD ) |
| MICHAEL ATCHINGSON, et al., | ) ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Before the Court are Defendants Eric Althoff, Michael Atchingson, Angelia Blackman-Donovan, Jeanette Cowan, Craig Findley, Donald Gaetz, Tara Goines, Milton Maxwell, Jorge Montes, David Rednour, and Betsy Spiller's Motion for Summary Judgment and Plaintiff's Motion to Voluntarily Dismiss Defendant Michael Atchingson. (Docs. 178, 191.) Plaintiff Benyehudah Whitfield, formally an inmate in the custody of the Illinois Department of Corrections, filed this action against Defendants, alleging violations of his constitutional rights in relation to the execution of his criminal sentence and mandatory supervised release ("MSR"). (Doc. 1.) On September 28, 2015, the Court dismissed Plaintiff's claims insofar as they pertained to the imposition of MSR by the Illinois state court. (Doc. 98.) On May 19, 2017, Plaintiff amended his complaint and now proceeds on the following claims:

**Count 1:** Defendants violated Plaintiff's rights under the Due Process Clause of the Fourteenth Amendment in connection with MSR proceedings, disciplinary proceedings, and the execution of his criminal sentence;

**Count 2:** Defendants violated Plaintiff's rights under the Eighth Amendment by acting with deliberate indifference towards Plaintiff as he continued to be incarcerated and placed in segregation after his release date.

> **Count 3:** Defendants violated Plaintiff's rights under the First Amendment by retaliating against Plaintiff for refusing to agree to the conditions of his MSR by revoking his MSR and by placing Plaintiff in segregation.

(Doc. 184).

Defendants move for summary judgment against Plaintiff on all counts. For the following reasons, the Court **DENIES** Defendants' motion with respect to Defendants Althoff, Maxwell and Blackman-Donovan and **GRANTS** the motion in all other respects.

## BACKGROUND

Plaintiff Benyehudah Whitfield was incarcerated at Menard Correctional Center ("Menard") From September 10, 2008 to December 15, 2010, when he was transferred to Western Illinois Correctional Center ("Western"). (Doc. 192-7 at 1.) He was discharged from custody on July 7, 2011. (*Id.* at 3.)

Defendants Donald Gaetz and David Rednour each served as warden of Menard during the period relevant to Whitfield's claims. Defendant Jeannette Cowan served as a grievance officer at Menard. Defendant Betsy Spiller served as a clinical services supervisor at Menard. Defendant Tara Goines served as a correctional counselor at Western. Defendants Eric Althoff, Angelia Blackman-Donovan, Craig Findley, Milton Maxwell and Jorge Montes served as members of the Prisoner Review Board.

Whitfield was arrested on December 7, 1994, which commenced his term of incarceration. (Doc. 192-7 at 8.) On September 30, 1996, the Circuit Court of Cook County, following a jury trial on several counts including one count of home invasion, sentenced Whitfield to forty years of imprisonment. (*Id.* at 2.) On October 2, 1996, the Circuit Court considered two counts of aggravated battery and sentenced Whitfield to two three-year terms of imprisonment to run concurrently with each other but consecutively with the home invasion sentence. (*Id.* at 9.) The home invasion sentence was reduced to twenty-five years July 28, 1999

(*Id.* at 10.) On September 25, 2009, the Circuit Court amended Whitfield's sentencing order to include three years of mandatory supervised release. (*Id.* at 13.) Whitfield's sentence was also subject to a system of good time credit, in which inmates are credited for one day of their sentence for each day of good behavior. (*Id.* at 3.) During his period of incarceration, Whitfield lost thirteen months of good time credit. (*Id.* at 4.)

Based on this information, the Department of Corrections calculated Whitfield's sentence as follows:

| **Date of Incarceration** | **12/7/94** |
|---|---|
| Sentence of Imprisonment | + 28 years |
| Good Time Credit | - 12 years, 11 months |
| **Date of Mandatory Supervised Release** | **1/7/10** |
| Sentence of Mandatory Supervised Release | + 3 years |
| Good Time Credit | - 1 year, six months |
| **Date of Discharge** | **7/7/11** |

(Doc. 192-7 at 30-34.)

On February 26, 2009, Whitfield submitted an emergency grievance, stating that he should have been discharged on MSR as of April 7, 2006 and demanding an immediate release. (Doc. 192-10 at 29-30.) On March 4, 2009, an assistant warden found that the grievance did not present an emergency, instructed Whitfield to submit the grievance through the normal process and signed the finding on behalf of Defendant Gaetz. (*Id.* at 10-11, 29-30.)

On March 19, 2009, Whitfield submitted a grievance stating that he should have been released on MSR as of January 7, 2007 and demanding an immediate release and monetary damages. (*Id.* at 31-32.) A correctional counselor responded to the grievance that same day,

stating that inmates are required to submit grievances within sixty days of the incident and that Whitfield did not submit his grievance in a timely manner. (*Id.*) On March 26, 2009, Defendant Cowan denied Whitfield's grievance, stating that his MSR sentence was consistent with Illinois law. (*Id.* at 33.) On March 30, 2009, an assistant warden concurred with Cowan's response and signed on behalf of Defendant Gaetz. (*Id.* at 12, 33.)

The Prisoner Review Board entered an order approving Whitfield for MSR on September 16, 2009 (Doc. 193 at 29.) The order also set Whitfield's MSR conditions, which included an obligation to obey the general rules governing releasees and electronic monitoring. (*Id.*) On January 7, 2010, Whitfield met with a correctional staff member regarding his MSR and refused to sign the electronic surveillance agreement, stating that he was not legally required to do so. (Doc. 192-1 at 33; Doc. 192-2 at 1.) Later that day, a correctional counselor advised Whitfield that the refusal to sign the agreement could result in the revocation of MSR. (Doc. 192-7 at 17.) Because of his refusal to sign, Whitfield was issued a disciplinary report for disobeying a direct order. (Doc. 192-7 at 19.) The Department of Corrections also issued a warrant for Whitfield's arrest as an MSR violator. (*Id.* at 18.) On January 11, 2010, an MSR supervisor issued a report finding that Whitfield violated his MSR conditions by failing to sign the electronic surveillance agreement. (Doc. 193 at 26-28.)

Also on January 11, 2010, Whitfield submitted a grievance stating that the Department of Corrections had no authority to retain him past his release date and that there was no legal authority for subjecting him to electronic surveillance. (Doc. 197-11 at 4-5.) Whitfield characterized his complaints as an emergency but did not check the box on the grievance form to indicate that he was filing an emergency grievance. (*Id.*) He demanded the legal authorization for electronic surveillance or an immediate release. (*Id.*) Defendant Spiller responded to

4

Whitfield's grievance, finding that he violated his MSR conditions by failing to sign the electronic surveillance agreement, despite receiving four opportunities to do so. (*Id.*)

The Adjustment Committee held a hearing on the disciplinary report on January 12, 2010. (Doc. 192-4 at 2.) Whitfield did not appear at the hearing because a correctional officer prevented him from leaving his cell due to the braids in Whitfield's hair and did not allow Whitfield sufficient time to remove the braids. (Doc. 192-1 at 5-6.) The Adjustment Committee found Whitfield guilty as charged and recommended C grade status, segregation and commissary restriction for three months. (Doc. 192-4 at 2.) An assistant warden approved the recommendation of the Adjustment Committee and signed on behalf of Defendant Gaetz. (Doc. 192-10 at 13-14.)

Shortly thereafter, Whitfield signed the electronic surveillance agreement. (Doc. 192-1 at 5.) While in segregation, he was placed in a cell with a steel door. (*Id.* at 17-18.) He was assigned cellmates with mental health issues, which he found threatening. (*Id.*) He was also subjected to unpleasant odors, constant noise, and other inmates throwing feces at him through their cell doors. (*Id.*)

On January 20, 2010, Whitfield waived his right to a preliminary hearing before the Prisoner Review Board. (Doc. 193 at 28.) On February 24, 2010, he attended an MSR hearing before Defendant Findley. Findley found that Whitfield violated his MSR conditions. (Doc. 193 at 34.) However, because Whitfield had since signed the electronic surveillance agreement, Findley continued his MSR, subject to an approved plan and the MSR conditions previously set by the Prisoner Review Board.[1] (*Id.*) Defendant Maxwell concurred with Findley's decision. (*Id.*)

---

[1] Based on the testimony of Defendant Althoff, "continuing MSR" means that the Prisoner Review Board's authorization for MSR remains valid and that the MSR is not revoked. (Doc. 197-9 at 14.)

5

On May 19, 2010, Whitfield attended an MSR hearing before Defendant Althoff. Althoff found that Whitfield violated his MSR conditions by failing to sign the MSR agreement. (*Id.* at 33.) However, Althoff also continued Whitfield's MSR subject to an approved plan and the MSR conditions previously set by the Prisoner Review Board. (*Id.*) Defendant Maxwell concurred with Defendant Althoff's decision. (*Id.*)

On September 14, 2010, Whitfield received the following notice from the Prisoner Review Board:

> You are hereby notified of your parole/MSR violation hearing on alleged charges, for which you have previously been served notice, of violating conditions of parole/MSR.
>
> The hearing is scheduled for: 9/15/10 at 9:00 a.m. [at] Menard Correctional Center[.]
>
> You are responsible for presentation of documents, witnesses, and other evidence in your defense at this hearing. Please be prepared for your hearing at the time indicated above. If you are to be represented by an attorney or wish to have witnesses present, they must make an appointment with our office (217) 782-[xxxx] one week prior to the above-scheduled hearing date, or they will not be allowed to be present at your hearing.

(Doc. 193 at 31.)

Whitfield attended the September 15, 2010 MSR revocation hearing before Defendant Blackman-Donovan. (*Id.* at 32.) As a matter of course, Defendant Blackman-Donovan reviewed files on releasees prior to MSR hearings, which included prior orders from the Prisoner Review Board. (Doc. 197-14 at 7.) Following such hearings, Defendant Blackman-Donovan would meet with the other members of the panel and discuss the hearings and the orders. (*Id.* at 13.) Blackman-Donovan found that Whitfield violated his MSR conditions by failing to sign the MSR agreement and made the decision to revoke Whitfield's MSR. (*Id.*) Defendants Althoff and Maxwell concurred with Blackman-Donovan's decision. (*Id.*)

On October 20, 2010, Whitfield submitted a grievance in which he generally complained about his MSR term, including the MSR hearing on September 15, 2010, and requested immediate release and the restoration of good conduct credit. (Doc. 197-11 at 11.) Defendant Cowan recommended the denial of the grievance based on her review of Whitfield's previous grievances regarding his MSR term and her understanding that the MSR term was statutorily required. (*Id.*) An assistant warden denied the grievance and signed Defendant Rednour's name. (Doc. 192-12 at 15.)

The Department of Corrections calculates sentences but cannot modify an order from the Prisoner Review Board or any Court. (Doc. 192-7 at 1, 3.) The Prisoner Review Board does not calculate sentences. (Doc. 197-9 at 14.) The Prisoner Review Board requires releasees to agree to the terms and conditions of their MSR, and the failure to do so may result in the finding of a violation. (Doc. 197-14 at 12; Doc. 197-18 at 18-19.)

## DISCUSSION

Pursuant to Federal Rule of Civil Procedure 56(a), the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When deciding a motion for summary judgment, the Court shall "examine the record and all reasonable inferences in the light most favorable to the non-moving party." *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014). Summary judgment must be denied "if a material issue of fact exists that would allow a reasonable jury to find in favor of the non-moving party." *Id.*

### *Count 1 – Procedural Due Process*

In Count 1, Whitfield asserts that Defendants violated his right to procedural due process by: failing to discharge him from the custody of the Department of Corrections in accordance

7

with his sentence; failing to release him on MSR; and subjecting him to disciplinary segregation.[2] In order to prove procedural due process claims, a plaintiff must show: (1) a deprivation of a protected liberty or property interest; and (2) the absence of constitutionally adequate procedural safeguards in connection with the deprivation. *Pro's Sports Bar & Grill, Inc. v. City of Country Club Hills*, 589 F.3d 865, 870 (7th Cir. 2009).

Whitfield first takes issue with the Department of Corrections' determination of his MSR and discharge dates. However, the Department's detailed calculations are contained in the record and Whitfield has offered no evidence that the MSR date or discharge date was calculated incorrectly. As such, the record contains no evidence from which a jury could reasonably conclude that Whitfield was denied due process with respect to his release from custody or his MSR date.

Whitfield also asserts that he was deprived of a protected liberty interest without due process when he was placed in segregation for three months. "Whether a prisoner has a liberty interest implicated by special confinement relies on whether the confinement imposed an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Hardaway v. Meyerhoff*, 734 F.3d 740, 743 (7th Cir. 2013). "Although relatively short terms of segregation rarely give rise to a prisoner's liberty interest, at least in the absence of exceptionally harsh conditions, such an interest may arise from a long term of confinement combined with atypical and significant hardships." *Id.* The Seventh Circuit has previously held that a three-month term of segregation alone does not implicate a protected liberty interest. *Lekas v. Briley*, 405 F.3d 602, 613 (7th Cir. 2005); *Crowder v. True*, 74 F.3d 812, 815 (7th Cir.

---

[2] The Court purposefully distinguishes the terms "discharge from custody" and "release on MSR." An inmate released on MSR is still within the custody of the Department of Corrections. *See Cochran v. Buss*, 381 F.3d 637, 640 (7th Cir. 2004).

1996); *see also Hardaway,* 734 F.3d at 744 (six months, one day); *Thomas v. Ramos*, 130 F.3d 754, 761 (7th Cir. 1997) (seventy days).

Moreover, the record does not raise an issue of fact as to whether Whitfield was subjected to exceptionally harsh conditions that would trigger a protected liberty interest. The segregation conditions described by Whitfield are comparable to those in *Hardaway v. Meyerhoff*, 734 F.3d 740, 743 (7th Cir. 2013). In *Hardaway*, the prisoner was placed in a segregation cell for a period of 182 days with a closed solid metal door, a cellmate who physically assaulted him and only weekly access to the showers and recreational yard. *Id.* at 742043. The Seventh Circuit found that the prisoner's confinement in segregation under those conditions did not constitute the deprivation of a protected liberty interest.

Here, Whitfield testified that while in segregation, he was placed in a cell for three months with a steel door and assigned cellmates with mental health issues. He was also subjected to unpleasant odors, constant noise, and other inmates throwing feces at him through their cell doors. Given these conditions, which are similar to those present in *Hardaway*, and the significantly shorter duration of Whitfield's segregation, Whitfield's time in segregation did not impose an atypical or significant hardship and therefore, does not constitute the deprivation of a protected liberty interest. Additionally, the record is devoid of any evidence of personal involvement by any defendant with respect to Whitfield's time in segregation or the conditions of that confinement. *See Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) ("[A]n official satisfies the personal responsibility requirement of section 1983 if the conduct causing the constitutional deprivation occurs at his direction or with his knowledge and consent. That is, he must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye.").

Whitfield argues that he had a protected liberty interest in his MSR. "[A]n inmate on parole has a liberty interest in retaining that status and [] this right has been extended to pre-parolees." *Domka v. Portage Cty., Wis.*, 523 F.3d 776, 781 (7th Cir. 2008). The Prisoner Review Board authorized Whitfield for MSR, which created a liberty interest, and Whitfield suffered a deprivation of that interest when he was prevented from commencing MSR on his MSR date. *See e.g., Crayton v. Duncan*, 2015 WL 2207191, at *5 (S.D. Ill. 2015); *Murdock v. Walker*, 2014 WL 916992, at *6 (N.D. Ill. 2014). The relevant question then, is whether Whitfield received constitutionally adequate process in connection with the deprivation.

> With respect to revocation hearings, the minimum requirements of due process include:
>
> (a) written notice of the claimed violations of parole;
> (b) disclosure to the parolee of evidence against him;
> (c) opportunity to be heard in person and to present witnesses and documentary evidence;
> (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation);
> (e) a neutral and detached hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and
> (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

*Morrissey v. Brewer*, 408 U.S. 471, 489 (1972).

The Prisoner Review Board continued Whitfield's status as a releasee at the first two MSR hearings and therefore did not deprive him due process prior to the September 2010 hearing. But the record is unclear as to why Whitfield was not released on MSR prior to the September 2010 hearing. An arrest warrant was issued when Whitfield refused to sign the MSR agreement and Whitfield waived his right to a preliminary hearing, which accounts for his continued incarceration through the February 2010 hearing. However, the record offers no explanation for why Whitfield was not released thereafter. The record also lacks any evidence showing that any

defendant was personally involved in the decisions underlying Whitfield's continued incarceration prior to the September 2010 hearing.

As to the September 2010 hearing, Defendants Althoff, Maxwell and Blackman-Donovan obviously deprived Whitfield of a protected liberty interest when they revoked his MSR. The Illinois Administrative Code delegates responsibility for providing procedural protections for revocation hearings to the presiding panel of the Prisoner Review Board. 20 Ill. Admin. Code §§ 1610.10–1610.160. The record does not reflect the personal involvement of any other defendant as it relates to this hearing or the revocation decision.

The record raises a question of fact as to whether Defendants Althoff, Maxwell, and Blackman-Donovan denied Whitfield procedural due process in revoking his MSR. The order from the September 2010 hearing states that Whitfield violated his MSR conditions by failing to sign an MSR agreement. However, it offers no explanation as to why this violation constituted grounds for MSR revocation in light of the fact that Prisoner Review Board had previously acknowledged that Whitfield eventually signed an MSR agreement and had twice continued his MSR with knowledge of the initial refusal to sign. Similarly, the record raises the question as to whether Whitfield received adequate prior notice of the purpose of the hearing. The notice provided merely refers to "alleged charges, for which you have previously been served notice, of violating conditions of parole/MSR."

Additionally, Whitfield was constitutionally entitled to retain counsel at this hearing. *Goldberg v. Kelly*, 397 U.S. 254, 270 (1970); *see also* 20 Ill. Admin. Code § 1610.140(c) ("As per *Goldberg vs. Kelly*, a parolee shall have the right to retain counsel at both the preliminary and revocation hearing."). Defendants argue that Whitfield received ample notice of his right to counsel because on January 7, 2009, Whitfield received a Notice of Rights form that advised him

of his rights in connection with the preliminary MSR hearing. However, even if the Notice of Rights sufficed to inform Whitfield of his right to counsel, Whitfield was denied a reasonable opportunity to exercise that right in connection with the September 2010 hearing. According to the record, Whitfield received notice of the September 2010 hearing one day before the hearing. At the same time, the procedures required Whitfield's counsel to notify the correctional facility of his or her intent to appear one week before the hearing. Given the impossibility of complying with the one-week notice requirement, Whitfield was effectively denied the right to counsel.

In sum, the record contains evidence from which a reasonable jury could find that Defendants Althoff, Maxwell and Blackman-Donovan violated Whitfield's right to procedural due process in connection with the MSR revocation hearing in September 2010. However, there is insufficient evidence to support the other aspects of Whitfield's procedural due process claim. Accordingly, as to Count 1, Defendants' Motion for Summary Judgment is denied with respect to Whitfield's procedural due process claim against Defendants Althoff, Maxwell and Blackman-Donovan, but is granted in all other respects.

### *Count 2 – Deliberate Indifference*

In Count 2, Whitfield alleges that Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment by acting with deliberate indifference regarding his sentencing calculations and discharge, his release on MSR and his confinement in disciplinary segregation. "To defeat summary judgment on his Eighth Amendment claim, [a plaintiff] needs to prove that the defendants held him beyond the term of his incarceration without penological justification, and that the prolonged detention was the result of the defendants' deliberate indifference." *Armato v. Grounds*, 766 F.3d 713, 721 (7th Cir. 2014). Significantly, Whitfield's Eighth Amendment claims substantively mirror his Fourteenth Amendment claims. Thus, the

Court's analysis of Count 2 is substantially similar to its analysis of Count 1. With respect to the sentencing calculations, his claim fails based on the lack of evidence demonstrating that the sentence was calculated incorrectly or that Whitfield was in fact discharged in an untimely manner. Whitfield's claim arising from his disciplinary segregation fails based on the lack of evidence showing the personal involvement of Defendants.

As to Whitfield's release on MSR, his claim shall proceed to trial solely with respect to the conduct of Defendants Althoff, Maxwell and Blackman-Donovan in connection with the MSR hearing in September 2010. The record indicates that the only other defendant with knowledge of the September 2010 hearing was Defendant Cowan. On October 20, 2010, Whitfield submitted a grievance in which he generally complained about his MSR term and requested immediate release and the restoration of good conduct credit. Although the grievance mentions the September 2010 hearing, it does not focus on the hearing and offers no indication that Whitfield believed that the Prisoner Review Board's determination was incorrect. Defendant Cowan recommended the denial of the grievance based on her review of Whitfield's previous grievance on the imposition of the MSR term and her understanding that the MSR term was statutorily required. Considering the focus of the October 2010 grievance, the Court finds as a matter of law that Cowan did not act with deliberate indifference by recommending the denial of the grievance.

Accordingly, summary judgment is denied as to Whitfield's deliberate indifference claim in Count 2 against Defendants Althoff, Maxwell and Blackman-Donovan, but is granted in all other respects.

## *Count 3 – Retaliation*

In Count 3, Whitfield alleges that Defendants violated his First Amendment right to free speech by retaliating against him in the following respects: (1) by failing to discharge Whitfield from custody in accordance with his sentence; (2) by failing to release Whitfield on MSR; and (3) by subjecting Whitfield to disciplinary segregation. Whitfield's retaliation claim based on his discharge from custody and disciplinary segregation is subject to summary judgment for the same evidentiary deficiencies discussed for Counts 1 and 2 – the lack of a protected interest and the lack of personal involvement by any of the named defendants.

"To prevail on a First Amendment retaliation claim, [Whitfield] must ultimately show that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action." *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). "Conduct that does not independently violate the Constitution can form the basis for a retaliation claim, if that conduct is done with an improper, retaliatory motive." *Hoskins v. Lenear*, 395 F.3d 372, 375 (7th Cir. 2005).

There is no dispute as to the first element – Whitfield's initial refusal to sign the MSR agreement is protected speech. With respect to the failure to release Whitfield on MSR, the sole deprivation for which any defendant was personally involved was the MSR hearing in September 2010. As previously noted, the record contains no explanation as to why Defendants Althoff, Maxwell and Blackman-Donovan revoked Whitfield's MSR in September 2010 even though he signed the agreement in early 2010 and the Prisoner Review Board continued Whitfield's MSR in February and May 2010. There is also evidence indicating that at the time they revoked

Whitfield's MSR, Althoff, Maxwell and Blackman-Donovan had full knowledge of his history before the Prisoner Review Board. The jury may certainly conclude that there is no reasonable relationship between the MSR revocation and legitimate penological interests and therefore, that Whitfield's initial refusal to sign the agreement motivated the revocation of his MSR and was retaliatory.

Accordingly, as to Count 3, Defendants' motion is denied with respect to Whitfield's claim of First Amendment retaliation against Defendants Althoff, Maxwell and Blackman-Donovan, but is granted in all other respects.

*Qualified and Sovereign Immunity*

Defendants argue that they are entitled to the affirmative defense of qualified immunity as a matter of law. As a result of the Court's previous rulings dismissing the claims against all other defendants, it need only consider whether qualified immunity applies to Defendants Althoff Maxwell and Blackman-Donovan.

Generally, government officials are protected from civil liability when performing discretionary functions under the doctrine of qualified immunity so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Alvarado v. Litscher*, 267 F.3d 648, 652 (7th Cir. 2001). Thus, in order to evaluate a claim of qualified immunity, the Court engages in a two-step analysis. *Jacobs v. City of Chicago*, 215 F.3d 758, 766 (7th Cir. 2000). First, the Court considers whether a plaintiff's claim states a violation of his constitutional rights. *Id.* Then, the Court determines whether those rights were clearly established at the time the violation occurred. *Id.* As set forth above, Whitfield's due process

and retaliation claims against Althoff, Maxwell and Blackman-Donovan survive summary judgment and therefore arguably state a violation of his constitutional rights.

For a constitutional right to be clearly established, its contours "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Estate of Escobedo v. Bender*, 600 F.3d 770, 779 (7th Cir. 2010) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). The unlawfulness of a particular official's action must be apparent "in light of the pre-existing law." *Id.* A party may demonstrate that a right was clearly established by presenting a closely analogous case establishing the defendant's conduct was unconstitutional or by presenting evidence the defendant's conduct so patently violated the constitutional right that reasonable officials would know without guidance from a court. *See Hope*, 536 U.S. at 739–40.

The constitutional rights to procedural due process at revocation hearings and against retaliation for exercising First Amendment rights are clearly established and were at the time relevant to Whitfield's claims. *See e.g., Morrissey v. Brewer*, 408 U.S. 471, 489 (1972) (procedural due process); *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). Accordingly, Defendants Althoff, Maxwell and Blackman-Donovan are not entitled to qualified immunity.

While Defendants acknowledge that Whitfield's Second Amended Complaint does not assert any state law tort claims, they assert that such claims are "implied." The Court disagrees and Whitfield has clarified that he is not pursuing any state law claims. Thus, Defendants' assertion of sovereign immunity is moot.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment (Doc. 191) is **DENIED** as to Defendants Eric Althoff, Milton Maxwell and Angelia Blackman-Donovan on Counts 1, 2 and 3, but **GRANTED** as to the remaining defendants. The Clerk of Court shall

enter judgment against Plaintiff Beneyudah Whitfield and in favor of Defendants Jeanette Cowan, Craig Findley, Donald Gaetz, Tara Goins, Jorge Montes, David Rednour and Betsy Spiller at the close of this case. Additionally, Whitfield's Motion to Voluntarily Dismiss Defendant Michael Atchingson (Doc. 178) is **GRANTED**. Counts 1, 2, and 3 against Defendants Eric Althoff, Milton Maxwell and Angelia Blackman-Donovan shall proceed to trial.

**IT IS SO ORDERED.**

**DATED: August 28, 2017**

**s/ Staci M. Yandle**
**STACI M. YANDLE**
**United States District Judge**